1    Timothy P. Rumberger, Esq. California State Bar #145984
     **LAW OFFICES OF TIMOTHY P. RUMBERGER**
2    1339 Bay Street, Alameda, California 94501
     Phone: (510)841-5500; Fax: (510)521-9700
3    e-mail: tim@rumbergerlaw.com

4    Attorneys for the Representative Plaintiffs
     And the Plaintiff Class

5

6

7

8

9

10                          **UNITED STATES DISTRICT COURT**

11        **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

12

13   STANLEY F. SIDDLE and MICHAEL E.          )   **Case No.  4:19-cv-00568-JD (LB)**
     LIPSON, individually and on behalf of all those  )
14   similarly situated,                       )   **NOTICE OF MOTION AND MOTION**
                                                )   **AND MEMORANDUM OF POINTS**
15           Plaintiffs,                        )   **AND AUTHORITIES IN SUPPORT**
     v.                                         )   **OF MOTION FOR ORDER**
                                                )   **GRANTING FINAL APPROVAL OF**
16                                              )   **CLASS ACTION SETTLEMENT**
     THE DURACELL COMPANY,                      )
17   COSTCO WHOLESALE CORPORATION,              )
     TECHNOMATE MANUFACTORY, LTD.,              )   Judge:  Hon. James Donato
18   PRO-TEK INDUSTRIES, LLC.                   )   Time:   10:00 a.m.
                                                )   Date:    April 1, 2021
19           Defendants,                        )   Location Courtroom 11, 19th floor
                                                )
20   _____

21

22

23

24

25

26

27

28

*Law Offices of*
**TIMOTHY P. RUMBERGER**
**1339 Bay Street**
**Alameda, California 94501**
**(510) 841-5500**

                                                                                          i

                **Notice and Motion for Final Approval of Class Action Settlement**

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, CLASS MEMBERS, AND THE COURT**:

**PLEASE TAKE NOTICE** that on April 1, 2021, at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 11, on the 19th floor of the above-entitled Court located at 450 Golden Gate Avenue, San Francisco, California, before the Honorable James Donato, Judge of the United States District Court, Northern District of California, Representative Plaintiffs Stanley F. Siddle and Michael E. Lipson will and hereby do apply to this Court for an Order granting Final Approval of the Class Action Settlement in this litigation.

This Motion is made on behalf of all parties to this litigation, and based on the following Memorandum of Points and Authorities, the accompanying declarations of counsel, the exhibits attached thereto, the Court's record of this action; the oral and documentary evidence presented at the hearing on the motion by counsel, and all matters of which the Court may take judicial notice.

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Timothy P. Rumberger, Esq. and exhibits thereto, the Declaration of Alex Moulton for the Settlement Administrator P, the complete files and records of this action, and any oral argument and documentary evidence as may be presented to the Court at the hearing of this Motion.


Dated: February 18, 2021                **LAW OFFICES OF TIMOTHY P. RUMBERGER**


                                        By: _____
                                            Timothy P. Rumberger, Esq.
                                            Attorneys for Representative Plaintiffs
                                            and the Plaintiff Class

*Law Offices of*
**TIMOTHY P. RUMBERGER**
1339 Bay Street
Alameda, California 94501
(510) 841-5500

ii

**Notice and Motion for Final Approval of Class Action Settlement**

# TABLE OF CONTENTS

I.      INTRODUCTION AND PROCEDURAL HISTORY ………………………………..  1

II.     SUMMARY OF SETTLEMENT AND NOTICE PROCESS …………………………...  1

III.    THE SETTLEMENT MERITS FINAL APPROVAL ………………………………….  2

        A. THE SETTLEMENT IS PRESUMED FAIR …………………………………….  3

        B. AS THE COURT PREVIOUSLY FOUND, THE RELEVANT
           CRITERIA SUPPORT FINAL APPROVAL …………………………………..  5

           1.  The Value of the Settlement and the Risks Inherent in
               Continued Litigation Favor Final Approval ………………………………...  5

           2.  The Complexity, Expense and Likely Duration of Continued
               Litigation Support Approval ……………………………………………..  7

           3.  The Experience and Views of Counsel Favor Final Approval …………………  8

           4.  The Class Members' Reaction Favors Final Approval …………………………...  9

IV.     THE COURT ORDERED NOTICE PROGRAM IS CONSTITUTIONALLY
        SOUND AND HAS BEEN FULLY IMPLEMENTED ………………………………  9

V.      THE CAFA NOTICE WAS PROVIDED PURSUANT TO 28 U.S.C. §1715(b) ……….  10

VI.     AN AWARD OF ATTORNEYS FEES AND COSTS IS APPROPRIATE ……………. 11

VII.    REPRESENTATIVE PLAINTIFFS DESERVE MODEST SERVICE AWARDS ……. 13

VIII.   REIMBURSEMENT OF ADMINISTRATIVE FEES IS APPROPRIATE ................... 14

IX.     *CY PRES* AWARD IS APPROPRIATE…………................................................... 15

X       CONCLUSION …………………………………….......................................................... 17

*Law Offices of*
**TIMOTHY P. RUMBERGER**
**1339 Bay Street**
**Alameda, California 94501**
**(510) 841-5500**

iii

1

**TABLE OF AUTHORITIES**

2

**FEDERAL STATUTES**

3

15 U.S.C. §2301, *et seq.* Magnuson-Moss Warranty Act …………………………………………... 1

4

**CALIFORNIA STATUTES**

5

Business and Professions Code §17200, *et seq.*  Unfair Competition Law ……………………… 1

6

Civil Code §1750 Consumer Legal Remedies Act ……………………………………………… 1

7

8

**FEDERAL CASE AUTHORITY**

9

*Alberto v. GMRI, Inc.*, *Not Rpt'd in* F. Supp. 2d, 2008 WL 4891201 (E.D. Cal. 2008) …………. 8

10

*Barbosa v. Cargill Meat Solutions Corp.,* 2013 U.S. Dist. LEXIS 93194 (E.D. Cal. 2013) ……. 11

11

*Boeing Co. v. Van Gemert*, 44 U.S. 472 (1980) ……………………………………………........ 11

12

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979) …………………………………  6, 8

13

*Boyd v. Bank of Am. Corp.*, No. SACV 13-0561-DOC, 2014 WL 6473804 (C.D. Cal. 2014) …... 11

14

*Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534 (S.D. Fla. 1988) …………………………  6

15

*Central Railroad & Banking Co. of Georgia v. Pettus*, 113 U.S. 116 (1885) …………………..  11

16

*Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930 (N.D. Cal. 2016) ………………………………………  6

17

*Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012) …………………………………………  15

18

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (U.S. 1974) ………………………………………  9

19

*Guippone v. BH S&B Holdings LLC*, 2011 U.S. Dist. LEXIS 126026,
    (S.D.N.Y. Oct. 28, 2011) …………………………………………………………………  13

20

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975) …………………………………………………  6

21

*Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir. 1988) ……………………………………...  12

22

*In re GNC Shareholder Litig.: All Actions*, 668 F.Supp. 450 (W.D. Pa. 1987) …………………  13

23

*In Re: Heritage Bond Litig.*, No. 02 ML 1475, 2005 WL 1594403 (C.D. Cal. June 10, 2005) …  6

24

*In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568 (E.D. Pa. 2003) ……………...............  6

25

*In re Omnivision Techs.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2007) ……………………………  12

26

27

28

iv

*In re Quantum Health Resources, Inc. Sec. Litig.*, 962 F. Supp. 1254 (C.D. Cal. 1997) .......... 12

*In re United Energy Corp. Sec. Litig.*, 1989 WL 73211 (C.D. Cal. 1989) ........................... 13

*In re Warner Comm. Sec. Litig.*, 618 F.Supp. 735 (S.D.N.Y.1985) ................................... 13

*In re Washington Public Power Supply System Securities Litigation*,
    720 F. Supp. 1379 (D. Ariz. 1989) ................................................................ 8

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) ................................ 4, 6

*Morris v. Lifescan, Inc.* 54 Fed.Appx. 663 (9th Cir. 2003) ............................................. 11

*Nachshin v. AOL, LLC,* 663 F.3d 1034 (9th Cir. 2011) ....................................... 15, 16

*Officers for Justice Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ........................... 3, 8

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ................................................. 9

*Powers v. Eichen,* 229 F.3d. 1249 (9th Cir. 2000) ...................................................... 11

*Schofield v. Delta Air Lines, Inc.*, 2019 U.S. Dist. LEXIS 31535 (N.D. Cal. Feb. 27, 2019) ....... 7

*Six Mexican Workers v. Ariz. Citrus Growers,* 904 F.2d 1301 (9th Cir. 1990) ............ 15, 16

*Sprague v. Ticonic Nat'l Bank,* 307 U.S. 161 (1939) .................................................. 11

*Staten v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003 ...................................................... 11

*Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482 (E.D. Cal. 2010) ........................... 11

*Young v. Katz*, 447 F.2d 431 (5th Cir. 1971) ............................................................ 7

**CALIFORNIA CASE AUTHORITY**

*Dunk v. Ford Motor Co.*, 48 Cal.App.4th 1794 (1996) ........................................ 3, 4, 8, 9

*Ferguson v. Lieff, Cabraser, Heimann & Bernstein*, 30 Cal.4th 1037 (2003) ...................... 7

*Franklin v. Kayrpo Corp.*, 884 F.2d 1222 (9th Cir. 1989) ............................................. 7

*In re Consumer Privacy Cases,* 175 Cal.App.4th 545 (2009) ...................................... 11

*Kullar v Foot Locker Retail, Inc*, 168 Cal.App.4th 116 (2008).................................... 6, 9

*La Mesa-Spring Valley School Dist. of San Diego County v. Nobuo Otsuka*,
    57 Cal. 2d 309 (1962) ........................................................................ 12

*Law Offices of*
**TIMOTHY P. RUMBERGER**
**1339 Bay Street**
**Alameda, California 94501**
**(510) 841-5500**

v

**Notice and Motion for Final Approval of Class Action Settlement**

*Lealao v. Beneficial California*, 82 Cal.App.4th 19 (2000) ……………………………………… 11

*Salton Bay Marina, Inc.*, 172 Cal.App.3d 914 (1985) …………………………………………. 12

*Serrano v. Priest*, 20 Cal.3d 25 (1977) ………………………………………………........ 11

*Wershba v. Apple Computer Inc.*, 91 Cal.App.4th 224 (2004) ………………………….. 3, 9

**ACADEMIC AUTHORITY**

1 Alba Conte, *Attorney Fee Awards* ……………………………………………………… 13

*Manual for Complex Litigation* (4th ed. 2008) ……………………………………….. 3, 9

*Newberg on Class Actions* (5th ed. 2017) …………………………………………………… 4

.

1

2

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT**

3

## I.   INTRODUCTION AND PROCEDURAL HISTORY

4

5

6

7

8

9

10

On January 31, 2019, the underlying complaint in this action was brought on behalf of all Costco-member consumers who purchased Duracell-branded LED flashlights, manufactured by Duracell licensee Technomate Manufactory, packaged with Duracell batteries included, marketed in collaboration with and distribution by Duracell's retail partner Costco, within four years of the date this action was initially filed.  A fourth Defendant, Pro-Tek provides customer service for the Flashlights. The Flashlights were sold in packages of three, which also included twelve Duracell AAA batteries. The average price paid by Class Members was approximately $16.19. (Dkt.# 1).

11

12

13

14

15

Defendants each filed separate motions to dismiss, which the Court heard on September 12, 2019. The Court denied Duracell's motion to dismiss, granted the motions of Pro-Tek, P&G, and Costco with leave to amend, and took Technomate's motion to dismiss for lack of personal jurisdiction under submission. (Dkt.# 81). On September 25, 2019, the Court referred this action to Magistrate Judge Laurel Beeler to conduct a settlement conference. (Dkt.# 82).

16

17

18

19

20

21

22

The operative Third Amended Complaint (3AC, Dkt.#107) alleges that the model 350L Flashlights bearing date codes 1533, 1534 or 1535 are defective because they drain batteries in less than 30 days when turned OFF.  Plaintiffs allege claims of misrepresentation on Flashlight packaging, breach of express warranty, *i.e.* fraud/fraudulent concealment, violations of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §17200, *et seq.*, California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §1750 *et seq.*, and breach of express warranty under California law and the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C §2301, *et seq.*

23

## II.    SUMMARY OF SETTLEMENT AND NOTICE PROCESS

24

25

26

27

28

On October 9, 2020, Settlement of these claims was preliminarily approved by this Court (Dkt.# 115), together with approval of the proposed Notice process, appointment of Postlethwaite & Netterville (P&N) as Settlement Administrator, appointment of Representative Plaintiffs Stanley F. Siddle and Michael E. Lipson, and appointment of the Law Offices of Timothy P.

*Law Offices of*
**TIMOTHY P. RUMBERGER**
**1339 Bay Street**
**Alameda, California 94501**
**(510) 841-5500**

1

**Notice and Motion for Final Approval of Class Action Settlement**

Rumberger as Class Counsel to represent the Settlement Class defined consistent with the 3AC as: "All persons in the United States who purchased a three-pack of Duracell 350L flashlights bearing the date code 1533, 1534, or 1535 on the flashlight end cap." Settlement ¶ 2.34.

Costco maintains records of customer purchases, by member, identifiable by date and amount paid. Using the data available, the parties and Settlement Administrator were able to identify the pool of potential Class Members such that Notice has been provided efficiently and comprehensively to 99.1% of the Class. (*P&N project manager Alex Mouton decl*. ¶15).

Class Members are comprised of Automatic Payment Recipients and Claiming Recipients. As defined in the Settlement Agreement, Automatic Payment Recipients are Class Members whose purchase of Flashlights occurred on or before October 23, 2015 as reflected in Costco's records. Automatic Payment Recipients will receive a Settlement Payment without the need to submit a Claim Form. Claiming Recipients are Class Members who are not Automatic Payment Recipients and who submit an Authorized Claim consistent with the claims process and whose purchase of Flashlights on or before October 23, 2015 is reflected in Costco's records.

P&N sent the requisite CAFA Notice by certified mail to the U.S. Attorney General and the appropriate government officials for all fifty states, the District of Columbia, American Samoa, Guam, Northern Mariana Islands, Puerto Rico and the Virgin Islands. (*Mouton decl.* ¶16). No objections from any CAFA Notice recipient was received. (*id.*)

The Direct Notice Program reached a total of 177,690 of the 179,226 Class Members. Of these, only 4 requests for exclusion were received and no objections to the preliminarily approved Settlement has been received from any class member. (*Mouton decl.* ¶15, ¶22). As a result, Class Counsel anticipates 34,535 *more payments* than originally estimated in the preliminarily approved Settlement, with an estimated first round distribution amount of $7.23 per purchase, above the median and within the range provided in the Class Notice. (*Mouton decl.* ¶24).

## III.    THE SETTLEMENT MERITS FINAL APPROVAL

Class Counsel now respectfully requests, on behalf of all counsel, parties, class members and P&N, the Administrator, final approval of this Settlement the Court preliminarily approved,

*Law Offices of*
**TIMOTHY P. RUMBERGER**
**1339 Bay Street**
**Alameda, California 94501**
**(510) 841-5500**

2

**Notice and Motion for Final Approval of Class Action Settlement**

an Order of distribution of the $2.2 million dollar settlement upon funding by Technomate

consistent with the terms set forth in the Settlement Agreement, including two rounds of class

member disbursements, designation of a *cy pres* recipient for any nominal remaining funds, costs

of settlement administration by P&N, costs of litigation on behalf of the class, and attorneys' fees

as requested in Class Counsel's motion with supporting evidence and declarations, previously

filed December 28, 2020 (Dkt.118) and concurrently scheduled for hearing April 1, 2021.

When "the interests of the class are better served by the settlement than by further

litigation," the settlement is "fair, adequate and reasonable" and therefore merits final approval

*Manual for Complex Litigation* (4th ed. 2008) § 21.61, 462 ("*Manual*").  A court's inquiry on a

motion for final approval focuses upon whether the settlement is "fair, adequate and reasonable."

*Wershba v. Apple Computer Inc.*, 91 Cal.App.4th 224, 244-245 (2004); *Dunk v. Ford Motor Co.*,

48 Cal.App.4th 1794, 1801 (1996).   These conditions are met here.

While the Court possesses "broad discretion" in determining whether a proposed class

action settlement is fair, the Court's inquiry "must be limited to the extent necessary to reach a

reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion

between, the negotiation Parties, and that the settlement, taken as a whole, is fair, reasonable and

adequate to all concerned." *Dunk*, 48 Cal.App.4th at 1801 (quoting *Officers for Justice Civil Serv.*

*Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)). A court's approval of a class action settlement will

only be reversed for a clear abuse of discretion. *Dunk*, 48 Cal.App.4th at 1802.

## A.  THE SETTLEMENT IS PRESUMED FAIR

This Court has already determined, as articulated in the Order Granting Preliminary

Approval of this Settlement (Dkt.#115, p.4,ln.10, ¶12), " a presumption of fairness is appropriate

for the purposes of preliminary settlement approval," that the Settlement is "fair, reasonable and

adequate," that this Settlement "was reached in the absence of collusion, is the product of

*Law Offices of*
**TIMOTHY P. RUMBERGER**
**1339 Bay Street**
**Alameda, California 94501**
(510) 841-5500

3

**Notice and Motion for Final Approval of Class Action Settlement**

informed, good-faith, arm's-length negotiations between the parties and their capable and experienced counsel," and "within the range of reasonableness and possible judicial approval."

Similarly, for the purposes of final approval, "a presumption of fairness exists where: (1) the settlement is reached through arm's-length bargaining; (2) investigation and discovery are sufficient to allow counsel and the court to act intelligently; (3) counsel is experienced in similar litigation; and (4) the percentage of objectors is small. *Dunk*, 48 Cal.App.4th at 1802 (citing Newberg & Conte, *Newberg on Class Actions* §11.41, pp. 11-91).

Here, the Settlement clearly meets these criteria and is consistent with this Court's findings of fairness in its preliminary approval Order, as shown here.

This Settlement was reached through arm's length negotiations, facilitated by Magistrate Judge Laurel Beeler, and then several additional months of negotiation. Settlement negotiations were preceded by vigorous investigation of these claims before entering into the preliminarily approved settlement. Well in advance of filing the Complaint, Class Counsel developed independent analysis of the parasitic battery drain of the specific Duracell-branded LED flashlights identified in the Complaint, as well as gathering consumer complaint data from on-line comment boards, obtained consultant analytical data and diagnostic information, reports, surveys and testing results publicly available and widely disseminated.

Discovery efforts included the production and review of relevant documents through early informal discovery[1] and gathering key data points prior to mediation. Technomate also independently conducted a thorough investigation and determined the alleged defect resulted from a manufacturing anomaly during the assembly process of the flashlight endcap that had the

---

[1]    In many class actions, informally-exchanged discovery protects a defendant's proprietary and/or financial information, oftentimes allowing a richer and faster exchange of data calculated to determine the settlement value—putting the parties in a far better settlement position, so long as plaintiff's counsel is skilled in knowing what to request. Indeed, although formal discovery may be conducted, such is "not a necessary ticket to the bargaining table." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

*Law Offices of*
**TIMOTHY P. RUMBERGER**
**1339 Bay Street**
**Alameda, California 94501**
(510) 841-5500

4

**Notice and Motion for Final Approval of Class Action Settlement**

potential to cause a wire on the electronic control board to break, resulting in the Flashlights having the potential to draw a higher current when off than normal.[2]

The Notice Plan has given Class Members the best Notice practicable, and full and fair opportunity to evaluate the Settlement before deciding whether to participate, with only 4 of the noticed Class Members requesting exclusion[3] – a 99.99% rate of participation of the 177,690 noticed class members constituting 99.1% of the 179,226 total identified members in the class.

Additionally, the total absence of any objectors[4] supports the presumption that the Settlement is fair.

Finally, the recovery by each Class Member in relation to the retail value of the flashlights makes this Settlement an outstanding result, particularly given the significant risks faced on liability and damages, further buttressing the presumption that the Settlement is fair, reasonable, and adequate, deserving of final approval.

**B.  <u>AS THE COURT PREVIOUSLY FOUND, THE RELEVANT CRITERIA SUPPORT FINAL APPROVAL</u>**

**1.    The Value of the Settlement and the Risks Inherent in Continued Litigation Favor Final Approval**

When evaluating the Settlement for fairness, the Court should weigh the immediacy and certainty of substantial settlement proceeds against the risks inherent in continued litigation. In making a fairness determination, "[t]he most important factor is the strength of the case for

---

[2] These Flashlights, bearing end-cap date-code designations 1533, 1534 and 1535, were manufactured by Technomate between August 12, 2015 and August 29, 2015, and were sold by Costco. Technomate maintains that not all the 192,000 estimated "Durabeam Ultra" model 350-4AAA LED flashlight pages manufactured were defective, claiming the flashlights only had a *potential* for the defect to manifest during the assembly process. Technomate represents it has prevented the anomaly from reoccurring by making modifications to the printed circuit board, utilizing more robust electronic components on the circuit board.

[3] *Mouton decl.* ¶22

[4] *Mouton decl.* ¶23

*Law Offices of*
**TIMOTHY P. RUMBERGER**
**1339 Bay Street**
**Alameda, California 94501**
**(510) 841-5500**

5

**Notice and Motion for Final Approval of Class Action Settlement**

plaintiffs on the merits, balanced against the amount offered in settlement." *Kullar v Foot Locker Retail, Inc*, 168 Cal.App.4th 116, 128 (2008). This analysis often includes a comparison of the amount of the proposed settlement with the value of the damages potentially recoverable if successful in further litigation, appropriately discounted for the risk of not prevailing. *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 617-619 (N.D. Cal. 1979); *Cotter v. Lyft, Inc*., 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016).

The $2.2 million Settlement here provides a net $7.23 per package on each class member's purchase of the specified flashlights (sold for an average retail price of $16.19, *including* 12 AAA Duracell batteries which were *not* defective).

Absent settlement, Plaintiffs and the putative class members would have to establish that the alleged defect occurred in each Flashlight in each three-pack of Flashlights, which discovery to date has not established (*Rumberger decl. ¶20*).  Thus, while "[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery," here, the recovery is a significant percentage of the potential full recovery, thereby demonstrating that it falls within the range of reasonableness. *Behrens v. Wometco Enters., Inc*., 118 F.R.D. 534, 542 (S.D. Fla. 1988); *see also Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998); *In re Linerboard Antitrust Litig*., 296 F. Supp. 2d 568, 581,n.5 (E.D. Pa. 2003) (citing cases where courts approved settlements achieving only single-digit percentages of potential recoveries). *See also, In Re: Heritage Bond Litig*., No. 02 ML 1475, 2005 WL 1594403, at *19 (C.D. Cal. June 10, 2005) (recovery of 23% of the claimed loss after fees an "exceptional result").

The difference between a potential full recovery and the anticipated Settlement Payment is likely minimal. The Flashlights are not worthless. The alleged defect likely did not manifest in all 192,000, and the Flashlights worked as represented when turned on. Therefore, if the average price paid by consumers is $16.19, less the value of the 12 non-defective AAA batteries, then an

*Law Offices of*
**TIMOTHY P. RUMBERGER**
**1339 Bay Street**
**Alameda, California 94501**
**(510) 841-5500**

6

**Notice and Motion for Final Approval of Class Action Settlement**

1    anticipated settlement payment of $7.23 is a significant recovery. To the extent the Class Payment

2    may be less than full recovery each Class Member could receive if successful at trial, the

3    difference is far less than significant, given the risks faced by Plaintiffs as explained herein.

4        Given the risks the Class faced on liability, damages, and class certification, the Settlement

5    offers outstanding relief, and quite possibly greater relief than obtainable via protracted litigation.

6

7        **2.    The Complexity, Expense and Likely Duration of Continued**
        **Litigation Support Approval**

8

9        The settlement amount is further supported by the timing of the settlement. By settling

10   early, the parties avoided substantial litigation expenses. *Schofield v. Delta Air Lines, Inc.*, No. 18-

11   cv-00382-EMC, 2019 U.S. Dist. LEXIS 31535, at *16 (N.D. Cal. Feb. 27, 2019) (opining that an

12   early settlement that avoids "great expense" makes substantial settlement recovery "appropriate").

13       In evaluating for fairness, the Court should weigh the benefits of settlement against the

14   expense and delay involved in achieving an equivalent or even more favorable result at trial.

15   *Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971); *Kullar*, 168 Cal.App.4th 116, 120 (2008).

16   Courts have widely recognized, there exists "an overriding public policy favoring settlement of

17   class actions." *Ferguson v. Lieff, Cabraser, Heimann & Bernstein*, 30 Cal.4th 1037, 1054 (2003)

18   (citing *Franklin v. Kayrpo Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("public policy favor[s] the

19   compromise and settlement of disputes")). The alternative to a class action, namely numerous

20   individual actions, could tax private and judicial resources for years. Given the relatively modest,

21   though not inconsequential, amount of damages individual class members allegedly incurred, it

22   would be uneconomical to secure individual legal representation, even for those with the resources

23   to do so. But, here, the Settlement provides *all* class members, regardless of their means, the

24   opportunity of monetary recovery in an efficient manner, without the risk of the Court denying

25   class certification and/or finding no liability, and these consumers recovering nothing at all.

26

27

28

*Law Offices of*
**TIMOTHY P. RUMBERGER**
**1339 Bay Street**
**Alameda, California 94501**
**(510) 841-5500**

7

**Notice and Motion for Final Approval of Class Action Settlement**

Class Counsel also considered that, even if Plaintiffs prevailed, on both class certification and liability, the remaining processes could be lengthy and costly, potentially including appeals. Class action defendants may seek review from an order granting class certification, may drag out the trial through bifurcation of issues, phasing of the trial, challenges to its manageability, and the losing party there may take an appeal of any of these issues. As such, even a successful judicial resolution at the trial court level can be just the beginning of a lengthy, expensive process, stalling payments to class members for years. This judicial purgatory is compounded by the risk of adverse appellate rulings, which would remand the action to the trial court for further litigation, possibly with negative precedent. The complexity, expense, and delay of continued litigation in this matter supports final approval of the Settlement.

### 3.  The Experience and Views of Counsel Favor Final Approval

Class Counsel supports the Settlement as fair, reasonable, and adequate, and believes it in the best interest of the class as a whole.[5] (*Rumberger decl.* ¶21)  Class Counsel has substantial experience prosecuting complex litigation and class action lawsuits, and has participated in the prosecution of cases involving similar issues as presented here.[6] The endorsement by well-informed and qualified counsel of a settlement as fair, adequate, and reasonable is entitled to significant weight. *Dunk*, 48 Cal.App.4th at 1802; *Ellis Naval Air Rework Facility*, 87 F.R.D. 15 (N.D. Cal. 1980); *Boyd*, 485 F. Supp 610, 617 (N.D. Cal. 1979) .

---

[5] "When approving class action settlements, the court must give considerable weight to class counsel's opinions due to counsel's familiarity with the litigation and its previous experience with class action lawsuits." *Alberto v. GMRI, Inc., Not Rpt'd in* F. Supp. 2d, 2008 WL 4891201 (E.D. Cal. 2008) (*citing Officers for Justice*, 688 F.2d at 625 and *In re Washington Public Power Supply System Securities Litigation*, 720 F. Supp. 1379, 1392 (D. Ariz. 1989)).

[6]  *Rumberger decl.* ¶17-20 filed in support of the accompanying Motion for Award of Reasonable Attorneys' Fees scheduled for hearing concurrently with this Motion for Final Approval.

*Law Offices of*
**TIMOTHY P. RUMBERGER**
**1339 Bay Street**
**Alameda, California 94501**
(510) 841-5500

8

**Notice and Motion for Final Approval of Class Action Settlement**

1

**4.   The Class Members' Reaction Favors Final Approval**

2

Finally, on a motion for final approval when determining if a settlement is reasonable, a

3

court looks to "the reaction of class members to the proposed settlement." *Dunk*, 48 Cal.App.4th at

4

1801; *Wershba*, 91 Cal.App.4th at 244-245; *Kullar*, 168 Cal.App.4th at 119.

5

6

Here, class members' response to the Settlement is exceptional. As detailed in the

7

Settlement Administrator's supporting declaration,[7] there have been no objections and a *de*

8

*minimus* number of opt-outs, further demonstrating that the Settlement is fair, adequate, and

9

reasonable, and worthy of final approval.

10

11

**IV.    THE COURT ORDERED NOTICE PROGRAM IS CONSTITUTIONALLY SOUND AND HAS BEEN FULLY IMPLEMENTED**

12

13

In preliminarily approving the Notice Plan set forth in the Settlement Agreement, this

14

Court ruled at paragraph 15 in its Order (Dkt.#115, p.4,ln.10):

15

16

> The Court finds that the Notice Plan (i) is the best practicable notice; (ii) is reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency of the litigation and of their right to object to or to exclude themselves from the proposed Settlement; (iii) is reasonable and constitutes due, adequate and sufficient notice to all persons entitled to receive notice; and (iv) meets all requirements of applicable law.

17

18

19

To protect the rights of absent class members, the parties must provide the class with the

20

best notice practicable, though due process does not require actual notice to parties who cannot

21

reasonably be identified. *See, Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-812 (1985);

22

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (U.S. 1974); *Manual* § 21.311, n. 882 at 432.

The Court-approved Notice program met this standard and has been fully implemented.

23

The Settlement Administrator mailed and emailed the Notice Package reaching 99.1% of all class

24

members.  On October 29, 2020, the approved Notice was emailed and sent by first class mail,

25

successfully reaching 177,690 of the 179,226 class members identified, as set forth herein above.

26

This is unquestionably an excellent result.

27

28

---

[7] *Mouton decl*. ¶22-23

*Law Offices of*
**TIMOTHY P. RUMBERGER**
**1339 Bay Street**
**Alameda, California 94501**
**(510) 841-5500**

9

**Notice and Motion for Final Approval of Class Action Settlement**

In addition to the Automatic Payment Recipients, over two hundred claiming recipients (whom Costco had been unable to identify from its records as Settlement Class Members) submitted valid and timely claim forms entitling them to participate in the settlement distribution. (*Mouton decl.* ¶21) It should also be noted that the near non-existent number of opt outs and total absence of objectors is not tantamount to a lack of interest in the Settlement, however. While the claims administrator undoubtedly received far more, Class Counsel fielded *hundreds* of telephone calls from class members, but ***none*** demonstrating any concerns over the *sufficiency* of the Settlement. Indeed, not only did class members not reject the Settlement, they embraced it. (*Rumberger decl.* ¶22).

## V.    __THE CAFA NOTICE WAS PROVIDED PURSUANT TO 28 U.S.C. §1715(b)__

On August 28, 2020, pursuant to the Class Action Fairness Act at 28 U.S.C. §1715(b), P&N sent via certified mail a Notice, cover letter and compact disc to the U.S. Attorney General and the appropriate government officials for all fifty states, the District of Columbia, American Samoa, Guam, Northern Mariana Islands, Puerto Rico, and the Virgin Islands.[8]

The compact disc included:

a. A copy of the Class Action Complaint filed on January 31, 2019;
b. A copy of the First Amended Class Action Complaint filed on May 2, 2019;
c. A copy of the Second Amended Class Action Complaint filed on October 17, 2019;
d. A copy of the proposed Third Amended Class Action Complaint filed on August 20, 2020; and
e. A copy of the Plaintiffs' Notice and Unopposed Motion for Order Granting Preliminary Approval of Class Action Settlement, including the Settlement Agreement, and exhibits (including the detailed and short form notice with exclusion rights), filed on August 20, 2020.

P&N sent the CAFA Notice and tracked the certified mail delivery of each CAFA notice packet, confirming delivery to *all* recipients with USPS return receipts. No questions or objections were received by P&N from any recipient of the CAFA Notice.[9]

---

[8] *Mouton decl.* ¶16
[9] *Mouton decl.* ¶17-18

*Law Offices of*
**TIMOTHY P. RUMBERGER**
**1339 Bay Street**
**Alameda, California 94501**
**(510) 841-5500**

10

**Notice and Motion for Final Approval of Class Action Settlement**

1

2

## VI.    AN AWARD OF ATTORNEYS FEES AND COSTS IS APPROPRIATE

Class Counsel has separately filed a Motion for Attorney's Fees and Costs and Class

Representative Service Awards, consistent with the Settlement Agreement preliminarily approved

by the Court providing for Class Counsel's early advance filing thereof on December 28, 2020, in

advance of the January 28, 2021 deadline for class member objections and requests for exclusion.

This settlement provides for an attorneys' fee award not to exceed 25% of the $2,200,000

gross common fund, *i.e.* $550,000, substantially *below* the $733,333 benchmark of 33.3% often

applied in the resolution of common fund cases.[10] Plaintiffs' counsel has devoted substantial

resources and hundreds of hours to this litigation, as well as faced significant risk[11] in the

prosecution of this matter, resulting in an extraordinary fund being made available to a large

number of consumers.

The "common fund" method, or "percentage-of-the-benefit" analysis, calculates attorneys'

fees based on a percentage of the common benefit to the class. *In re Consumer Privacy Cases,* 175

Cal.App.4th 545 (2009); *Serrano v. Priest*, 20 Cal.3d 25 (1977). In cases where a common fund

has been created—*i.e.,* where each class member will "receive a mathematically ascertainable

payment"[12]—California state courts,[13] the Ninth Circuit[14] and the United States Supreme Court[15]

---

[10]    *See, e.g., Barbosa v. Cargill Meat Solutions Corp.,* 2013 U.S. Dist. LEXIS 93194 (E.D. Cal. 2013) (33% fee award of gross fund); *Boyd v. Bank of Am. Corp.*, No. SACV 13-0561-DOC, 2014 WL 6473804, at *9 (C.D. Cal. 2014) (1/3 fee award in class action); *Morris v. Lifescan, Inc*. 54 Fed.Appx. 663 (9th Cir. 2003) (affirming 33% fee award); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482 (E.D. Cal. 2010) (33.3% award in class action); *Rumberger Decl*. **Exhibit 3** (Compendium of typical Class Action Attorney Fee Awards).

[11]    Plaintiffs' counsel undertook this matter solely on a contingent basis, with no guarantee regarding the potential duration of the litigation or even the ultimate reimbursement of fees or costs. Looking, *ad hoc*, at the fact that a settlement did occur, doesn't change the risks accepted at the inception of the case or at any point in the timeline. Nor, looking more broadly, does it account for the countless cases that do not settle, do not settle well and/or are dismissed after sometimes thousands of hours of work thereon.

[12]    *Vasquez*, 266 F.R.D. 482 at *491 (E.D. Cal. 2010).
[13]    *Lealao v. Beneficial California*, 82 Cal.App.4th 19 (2000); *Serrano v. Priest*, 20 Cal.3d 25 (1977).
[14]    *Staten v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).
[15]    The United States Supreme Court has always computed common fund fee awards on a percentage of the fund basis. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 100 S Ct. 745 (1980); *Central Railroad & Banking Co. of Georgia v. Pettus*, 113 U.S. 116, 5 S.Ct. 387 (1885); *Sprague v. Ticonic Nat'l Bank,* 307 U.S. 161, 59 S.Ct. 777 (1939).

*Law Offices of*
**TIMOTHY P. RUMBERGER**
1339 Bay Street
Alameda, California 94501
(510) 841-5500

11

Notice and Motion for Final Approval of Class Action Settlement

1    agree that awarding attorneys' fees as a percentage of the common fund is the proper method.[16]

2         Class Counsel has invested considerable amounts of time and labor in litigating the Class'

3    claims, personally logging over 735 hours in prosecuting this litigation, at a below-market rate, as

4    set forth in the parallel motion. In so doing, Class Counsel drew on nearly three decades of

5    experience litigating class actions[17] in order to minimize wasted effort.

6         The fee award is further supported by the contingency risk assumed in prosecuting the

7    case.[18] The Law Offices of Timothy P. Rumberger undertook this matter solely on a contingent

8    basis, with no guarantee regarding the potential duration of the litigation or the ultimate recovery

9    of fees or costs. While Class Counsel believes the claims in this case are meritorious, it also

10    recognized the factual and legal challenges involved in complex litigation, generally, as well as the

11    specific risks posed by the facts in this case – particularly with a Hong-Kong-based primary

12    Defendant, Technomate Manufactory, LTD, challenging jurisdiction from the outset, with less-

13    than-transparent financials, language barriers and time-zone challenges.

14         The substantial hours Class Counsel spent on litigation, investigation and settlement efforts

15    in this case prevented it from pursuing other hourly or contingency fee-based work.

16         The experience and ability of Class Counsel were essential to the settlement achieved here.

17    Class Counsel developed an appropriate factual record, presented Defendants with their potential

18    exposure, and efficiently negotiated the terms of the Settlement. Counsel's class action litigation

19    experience enabled the effective marshalling of evidence to achieve this Settlement. "The overall

20    result and benefit to the class from the litigation is the most critical factor in granting a fee award."

21    *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007). Here, while

22    acknowledging Defendant was indeed making substantial strides toward remedying the

23    manufacturing errors and improving the design technology, Class Counsel was still able to secure

24    a great result for class members.

25    ---

[16]    A lodestar approach (enhanced by a multiplier) can be used as an alternative to the common fund theory when "there is no way to gauge the net value of the settlement or any percentage thereof." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).

26    [17]    *Rumberger decl.* ¶18.

27    [18]    Numerous Courts "agree...that 'riskiness,' difficulty or contingent nature of the litigation is a relevant factor in determining a reasonable attorney fee award." *Salton Bay Marina, Inc.*, 172 Cal.App.3d at 955 (*citing La Mesa-Spring Valley School Dist. of San Diego County v. Nobuo Otsuka*, 57 Cal. 2d 309, 316 (1962); *In re Quantum Health Resources, Inc. Sec. Litig.*, 962 F. Supp. 1254, 1257 (C.D. Cal. 1997).

28

*Law Offices of*
**TIMOTHY P. RUMBERGER**
**1339 Bay Street**
**Alameda, California 94501**
**(510) 841-5500**

12

Notice and Motion for Final Approval of Class Action Settlement

In addition, over the course of this litigation, Class Counsel incurred ordinary litigation costs over the past two years exceeding $44,000, and anticipates incurring additional expenses overseeing the settlement process,[19] yet Class Counsel offered and agreed to a voluntary ceiling for litigation costs of 2% of the gross common fund. Notably, this amount does not account for additional future expenses in overseeing the settlement process, making appearances, filing court documents, ensuring claims administration compliance with this Court's orders, responding to class members, etc. Since these costs are reasonable and serve to benefit the class, they warrant reimbursement.[20]

Finally, class members have been notified of the requested attorneys' fees and costs by means of the Notice, and no Class Members have objected. In light of the work performed, risks assumed and results achieved, it is clear that clear that Class Counsel's fee and cost reimbursement request is appropriate and should be approved.

## VII. REPRESENTATIVE PLAINTIFFS DESERVE MODEST SERVICE AWARDS

Consistent with the Settlement Agreement preliminarily approved by the Court providing for Class Counsel's early/advance-filing of a motion seeking nominally modest service awards for the Representative Plaintiffs, Class Counsel has separately made this request on December 28, 2020, a month before the January 28, 2021 deadline for class member objections and requests for exclusion.

The Settlement provides for service awards in the extremely modest amount of $2,200 (*i.e.*, one-tenth of one percent each) to Stanley Siddle without whom this litigation might never have been brought, and Michael Lipson — consistent with their involvement in the litigation.[21]

---

[19]  *Rumberger decl*. ¶30.
[20]  *In re United Energy Corp. Sec. Litig.*, *Not Rpt'd in* F.Supp., 1989 WL 73211, * 6 (C.D. Cal. 1989) ("[a]n attorney who creates or preserves a common fund by judgment or settlement for the benefit of a class is entitled to receive reimbursement of reasonable fees and expenses involved"); 1 Alba Conte, *Attorney Fee Awards* § 2:08 at 50-51 ("The prevailing view is that expenses are awarded in addition to the fee percentage."); *In re Warner Comm. Sec. Litig*., 618 F.Supp. 735 (S.D.N.Y.1985); *In re GNC Shareholder Litig.: All Actions*, 668 F.Supp. 450, 452 (W.D. Pa. 1987).
[21]  "[T]he fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known . . . Even where there is not a record of actual retaliation, notoriety, or personal difficulties, class representatives merit recognition for assuming the risk of such for the sake of absent class members." *Guippone v. BH S&B Holdings LLC*, 2011 U.S. Dist. LEXIS 126026, at **4, 20 (S.D.N.Y. Oct. 28, 2011).

*Law Offices of*
**TIMOTHY P. RUMBERGER**
**1339 Bay Street**
**Alameda, California 94501**
**(510) 841-5500**

13

**Notice and Motion for Final Approval of Class Action Settlement**

The proposed service awards are reasonable given the work the Representative Plaintiffs performed on behalf of fellow class members, the burdens they undertook by their participation in the litigation, and the unnoticeable impact the request will have on the amount of any class member's level of recovery. As detailed in each Representative Plaintiff's declaration, submitted in support of the accompanying motion, these individuals initiated their actions and devoted considerable time thereto. This included frequent emails and telephone calls with counsel to address issues surrounding challenges in this case, their own personal experiences with the defective Duracell-branded flashlights, the production of documents and communications surrounding mediation and settlement, and their full day of participation at the negotiations with Hon. Laurel Beeler in crafting the settlement agreement.

The requested service awards are both fair to other class members who have done nothing to achieve this settlement, and at $2,200 represent an infinitesimal one-one-thousandth of the common $2,200,000 Settlement Fund such that no class member will be measurably impacted by granting these service awards. For these reasons, the service awards should be approved.

## VIII.   REIMBURSEMENT OF ADMINISTRATIVE FEES IS APPROPRIATE

The Order preliminarily approving the Settlement Agreement "directs the Settlement Administrator to disseminate the Notice in accordance with the Notice Plan" and "perform all the duties of the Settlement Administrator as set forth in the Settlement Agreement and this Order," and further provides for a "declaration in support of its claim for costs of administration" to be filed current with the Motion for Final Approval. (Order, Dkt.#115, p.4,ln.14-20, ¶13-14).

Towards that end, the accompanying Declaration of P&N project manager Alex Mouton details the higher than projected participation rate triggering 34,535 *more* payments than originally estimated, such that: "Administrative fees and costs are now projected to be $198,226 ($103,979 in fees + $94,247 in postage expense. Based on these projections and the scope of work in our estimate, administrative costs will be well within the $220,000 not-to-exceed amount outlined in Section 6.10 of the Settlement Agreement." (*Mouton decl.* ¶24).

*Law Offices of*
**TIMOTHY P. RUMBERGER**
**1339 Bay Street**
**Alameda, California 94501**
**(510) 841-5500**

14

**Notice and Motion for Final Approval of Class Action Settlement**

# IX.    A *CY PRES* DESIGNATION IS APPROPRIATE

To the extent the Settlement Fund has money remaining after the Settlement Administrator takes all reasonable efforts to distribute the funds, the Settlement Agreement preliminarily approved by the Court provides for distribution of such remainder to a *cy pres* to be determined by the Court upon Final Approval.  Specifically, the Settlement provides, at Section 7.3.1. as follows:

> Following any secondary distribution [to the class members as detailed in Section 7.2.2] to the extent that any Settlement Payments remain uncashed after the expiration date, the Settlement Administrator will pay any such funds to the *Cy Pres* Recipient(s) subject to the Court's approval. If there is more than one *Cy Pres* Recipient, the remaining amounts will be distributed in equal amounts to each *Cy Pres* Recipient.

The Ninth Circuit in *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) explains that *cy pres* is shorthand for the equitable doctrine meaning "as near as possible." Although the doctrine originated in the area of wills as a way to effectuate the testator's intent in making charitable gifts, federal courts now frequently apply it in the settlement of class actions" 'where the proof of individual claims would be burdensome or distribution of damages costly'" (citing *Nachshin v. AOL, LLC,* 663 F.3d 1034, 1038 (9th Cir. 2011), quoting *Six Mexican Workers v. Ariz. Citrus Growers,* 904 F.2d 1301, 1305 (9th Cir. 1990)).

Used in lieu of direct distribution of damages to silent class members, this alternative allows for "aggregate calculation of damages, the use of summary claim procedures, and distribution of unclaimed funds to indirectly benefit the entire class." *Six Mexican Workers, supra,* 904 F.2d at 1305. To ensure that the settlement retains some connection to the plaintiff class and the underlying claims, a *cy pres* award must qualify as "the next best distribution" to giving the funds directly to class members. *Id.* at 1308.

As explained in *Dennis*, "Not just any worthy recipient can qualify as an appropriate *cy pres* beneficiary. To avoid the "many nascent dangers to the fairness of the distribution process," we require that there be "a driving nexus between the plaintiff class and the *cy pres* beneficiaries." *Id.* at 305, citing *Nachshin,* 663 F.3d at 1038.

*Law Offices of*
**TIMOTHY P. RUMBERGER**
**1339 Bay Street**
**Alameda, California 94501**
**(510) 841-5500**

15

**Notice and Motion for Final Approval of Class Action Settlement**

As such, a *cy pres* award must be "guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members," *Nachshin, supra,* at 1039, and must not benefit a group "too remote from the plaintiff class," *Six Mexican Workers, supra,* 904 F.2d at 1308. Thus, in addition to asking "whether the *class settlement,* taken as a whole, is fair, reasonable, and adequate to all concerned," the Court must also determine "whether the *distribution* of the approved class settlement complies with our standards governing *cy pres* awards." *Nachishin, supra,* 663 F.3d at 1040.

Towards that end, Representative Plaintiffs and Class Counsel nominate the National Association of Consumer Advocates (NACA), a nonprofit association committed to representing consumers' interests by public sector and private attorneys, legal services attorneys, professors, and law students whose primary focus is the protection and representation of consumers. NACA's mission is to promote justice for all consumers by maintaining a forum for communication, networking, and information-sharing among consumer advocates across the country, particularly regarding legal issues, and by serving as a voice for consumers in the ongoing struggle to curb unfair or abusive business practices that harm consumers. NACA has represented hundreds of thousands of consumers victimized by fraudulent, abusive, and predatory business practices. As a national organization fully committed to promoting justice for consumers, it is actively engaged in promoting a fair and open marketplace that forcefully protects the rights of consumers, particularly those of modest means – thus qualifying as having a "driving nexus between the plaintiff class and the *cy pres*." *Id.* NACA's charitable educational fund is incorporated under §501(c)(3).[22]

---

[22] https://www.consumeradvocates.org/about-naca

*Law Offices of*
**TIMOTHY P. RUMBERGER**
**1339 Bay Street**
**Alameda, California 94501**
**(510) 841-5500**

16

**Notice and Motion for Final Approval of Class Action Settlement**

Defendants have suggested Bay Area Legal Aid,[23] a *cy pres* which this court has approved in prior cases, whose mission is to provide meaningful access to the civil justice system through quality legal assistance regardless of a client's location, language or disability.

## X.    CONCLUSION

The proposed final settlement is consistent with the preliminary settlement proposal already approved by the Court. (DKT.#115). The CAFA Notice was successfully distributed via certified mail to the U.S. Attorney General and the appropriate government officials for all fifty states, the District of Columbia, American Samoa, Guam, Northern Mariana Islands, Puerto Rico, and the Virgin Islands. No questions or objections were received. Notice to 99.1% of the class members was successfully delivered, with 99.99% participation thereof.  There are no objectors and just 4 requests for exclusion. Under the settlement agreement, defendants will pay $2,200,000 into a non-reversionary Settlement Fund, which will serve as the source  for payments to the 177,690 Class Members of at least $7.35 for each purchase, notice and administration costs estimated at $198,226 (10% below the $220,000 cap in the Settlement Agreement), attorney's fees of $550,000 (25%), litigation cost reimbursement of $44,000 (2%), and one-one-thousandth of the common fund as modest service awards to the two Class Representatives in the amount of $2,200.

Based upon the foregoing, Representative Plaintiffs respectfully request that the Court grant final approval of the Settlement, including reimbursement of the settlement administration costs, Class Counsel's application for attorneys' fees and costs, the requested service awards to the named Plaintiffs, the initial distribution to the Class Members and a secondary distribution if sufficient unclaimed settlement funds remain uncashed, together with the *cy pres* designation.

---

[23] https://baylegal.org/

*Law Offices of*
**TIMOTHY P. RUMBERGER**
**1339 Bay Street**
**Alameda, California 94501**
**(510) 841-5500**

1 | Dated: February 18, 2021

2                                    By:_____

                                          TIMOTHY P. RUMBERGER, Esq.
3                                         Counsel for the Representative Plaintiffs
                                          and appointed Counsel for the Class Members
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Law Offices of*
**TIMOTHY P. RUMBERGER**
**1339 Bay Street**
**Alameda, California 94501**
**(510) 841-5500**

18

**Notice and Motion for Final Approval of Class Action Settlement**